## Richmond.

## BLACKWELL'S ADM'R V. BRAGG, TRUSTEE, AND ALS.

### April 17th, 1884.

1. STATUTE OF LIMITATIONS—*Disabilities—Cumulative.*—If party claims benefit of saving for infants and *femes covert* in statute of limitations, no other disability is available than the one which existed when right of action accrued. One cannot be mounted on another, so as to present continuous obstruction; therefore, the disability of marriage cannot be tacked on to that of infancy. *Parsons* v. *McCracken and ux,* 9 Leigh, 495.

2. IDEM—*Idem—Coexisting—Quoad* two or more disabilities coexisting in the same person when his right of action accrues, the rule is different, and he is not obliged to act until the last is removed. *Wilson* v. *Branch and als.,* 77 Va. 67.

3. IDEM—*Subsequent disability.*—When the statute begins to run, no new disability can stop its running.

4. IDEM—*Husband and wife.*—A bill by husband and wife, in wife's right, is husband's bill, she being joined only for conformity. Coverture of wife no excuse for delay in suing.

5. RES JUDICATA.—In suit in court of general jurisdiction over subject and parties for sale of intestate's property, and distribution of proceeds, and "for all equitable relief in the premises," settlement of administrator's accounts is also decreed and made, and amounts thus ascertained as due to distributees are decreed to be paid and are paid, the matter therein passed on is *res judicata,* and cannot be reopened, save as to parties then under disabilities, as provided by statute—the doctrine applying to all matters which the parties had opportunity to bring before the court, and extending to all facts involved in the decree as necessary ground-work therefor.

6. PERSONAL REPRESENTATIVES—*Accounts.*—Such accounts regularly settled, as provided by law, are to be taken as *prima facie* correct, and, except as to errors apparent on their face, can be impeached only on specific grounds of surcharge and falsification.

Appeal of J. W. Ellis, sheriff of Lunenburg county, and as such administrator *de bonis non* with the will annexed of R. Blackwell, deceased, from decree of circuit court of said county, rendered 6th October, 1881, in the chancery cause styled *Bragg, Trustee, and others* v. *Blackwell's Adm'r and others.*

In 1839, R. Blackwell qualified as guardian of Upton E. Hardy. Besides personalty the ward was entitled, as heir of his father, Miles Hardy, deceased, and as heir of a deceased brother and sister to part of a tract of land, which was sold for a sum whereof $3,751.84 was the ward's share, and for this a bond was executed by the purchaser. None of the principal went into guardian's hands. In 1850 the ward died intestate, and R. Blackwell qualified as his administrator. The account of the guardian was duly settled to 31st December, 1850, and confirmed in 1852. From this account it appears the balance in his hands on that day was $1,359.59, and was carried into the account of the administrator, which, for the years 1851 and 1852, were duly settled and confirmed; whence it appears that in 1852 the administrator collected from John Lee, the purchaser of the land, $3,857.49 on the bond; and considering Vincent Hardy, the paternal grandfather of his intestate, as the heir entitled to his real estate, paid over to him $4,277.77, or $430.31 more than he had collected. This amount was refunded to the estate, for it appears that the balance of the land money, amounting to $1,151.50, was received by the administrator and distributed, along with the other estate then in hand, among the next of kin of Upton E. Hardy.

In December, 1853, a decree was entered in the county court of said county, that R. Blackwell should settle his account as such administrator before a commissioner, and it was settled on the basis of the balance of $1,137.78, principal and interest, due the estate as of 30th June, 1854; which account was confirmed by a decree entered in' said

county court in October, 1854. The final account closes in June, 1858, with a balance of $2,395 due the estate, which balance was accounted for. These accounts were also confirmed and recorded.

In May, 1877, Wm. J. Bragg, trustee of Constance E. Bragg, formerly Penn, half sister of Upton E. Hardy, and L. Hatchett, and Lucy E., his wife, formerly Penn, and also a half sister, filed their bill against the personal representative of R. Blackwell, deceased, and his sureties, as guardian and as administrator, alleging generally that said Blackwell had not accounted with the plaintiffs for their shares of the estate. The personal representative answered, denying the allegations of the bill, and filed copies of his said settlements; which, by amended bill, plaintiffs attacked, on three grounds, to-wit: (1). The payment to Vincent Hardy, not only of the proceeds of the third of the land inherited by U. E. Hardy from his father, but also a considerable part of that inherited by him from his brother and sister. (2). The allowance of commissions to the administrator on the amount brought from his guardian account. And (3). The allowance to him, as administrator, of $328.05, as carried over into his account as guardian of said Lucy E. Hill, which sum it was alleged he never did carry to the latter account.

The cause having been matured at October term, 1881, the circuit court decreed: (1). That Hatchett and wife were barred by their *laches* from all claims on R. Blackwell's estate. (2). That payments of the land money to Vincent Hardy, beyond the proceeds inherited by intestate from his father, were erroneous. (3). That Bragg and wife, she having been an infant when the cause of action accrued, and married afterwards, during her infancy, were not barred. And (4). That there was no liability on R. Blackwell, as such guardian.

The bill was dismissed as to the sureties on the guardian

bond; but a commissioner was directed to go behind the said settlements of R. Blackwell's accounts as administrator, and settle the same *de novo*, according to the principles of the decree. From this decree the personal representative of. Robert Blackwell, deceased, appealed to this court.

The remaining facts and positions taken are stated in the opinion.

*George S. Bernard*, for the appellant.

*J. A. Jones, O. G. Kean, B. J. Eppes, Collier & Budd, Southall*, and *R. B. Davis*, for the appellees.

LACY, J., delivered the opinion of the court.

This case, so far as the facts are necessary to be stated, is as follows: In may, 1877, William J. Bragg and others instituted their suit in the circuit court of Dinwiddie county, setting up a claim to the estate of Upton E. Hardy, deceased, against the appellants, on account of the transactions of Robert Blackwell, deceased, as guardian of the said Upton E. Hardy, he having qualified as such in 1839, and as administrator of said Upton E. Hardy, he having qualified as such in 1850; alleging that the said Robert Blackwell had never properly accounted for the said estate, either as guardian or administrator, and seeking to hold his sureties in the guardian bond, and also his sureties in the administration bond, responsible.

Robert Blackwell died in 1860, but his administrator, the appellant, answered and denied the allegations of the bill and alleged that the said Robert Blackwell had fully accounted for the said estate, both as guardian and as administrator, and filed his regularly settled accounts in the county court of Lunenburg, where he resided, and the receipts of the ascertained balances of the parties in his life

time. The plaintiffs then amended their bill and sought to assail certain items in the settled accounts as of the years 1851–52, which were claimed to show that the several amounts therein entered were paid to a person not properly authorized to receive the same.

The record shows that one of the sisters of the said Upton E. Hardy having married, her husband and herself instituted their suit in the county court of Lunenburg against the said Robert Blackwell and the other two sisters of Upton E. Hardy, alleging that the said Upton E. Hardy died possessed of slaves, &c., and praying for a division of the same in the hands of said administrator, Blackwell, and " for all equitable relief in the premises," as it is termed in the bill.

The said county court decreed a division or sale of the slaves, and a sale and distribution of the proceeds were had. It ordered the said administrator to settle his transactions as such before one of its commissioners, which was done, and the balance decreed to be paid to the said parties thereto entitled, which several amounts so ascertained were paid in full.

But Bragg and wife and Hatchett and wife seek in their suit to attack the proceedings in that suit and correct the errors therein on the ground that they were in fault when the decree was rendered; and because the county court in said suit did not have the said administration accounts before it properly, but under the pleadings could only divide the slaves, or sell the same for distribution of the proceeds; and that they were not bound by the said decree because their answers by guardian *ad litem* were not sworn to and not signed.

The plaintiff, Mrs. Bragg, married in 1858, and became of full age the same year. The plaintiff, Mrs. Hatchett, became of full age in 1860, and then married.

The said Bragg filed his bill, as trustee for his wife, but the record shows that he was not so appointed until 1875.

· In 1873, when the appellee, Wm. J. Bragg, was adjudged a bankrupt, his wife's property was settled upon a trustee, John O. Bragg, for her benefit, on the 3d of June of that year.

The first question in this case is, are the said plaintiffs, Bragg and wife, and Hatchett and wife, bound by the de- cree of the county court in a suit to which they were par- ties, or have they the right to set aside the same in a col- lateral proceeding? The appellees, Mrs. Bragg and Mrs. Penn, were infants at the time the decree was entered in 1854. Mrs. Bragg married before she became of full age, and Mrs. Penn afterwards; the first became of age in 1858, the second in 1860. This suit was instituted in 1877. The circuit court, by the decree of October, 1881, in the cause, held that Mrs. Penn was barred because she became of full age before she married, but that Mrs. Bragg was not barred because she had been under disabilities continu- ously from the time the cause of action arose, by reason of the alleged erroneous payment, up to the time of the decree of the district court of the United States settling the right upon her as separate estate.

Under § 10, ch. 174 of the Code of Virginia, both had six months after they came to full age to show cause against the decree of 1854. The circuit court did not err in decid- ing that Mrs. Penn had lost her right to have the said decree enquired into, and to show cause against it.

· Did the fact that Mrs. Bragg voluntarily incurred the second disability of coverture before she was relieved of the first constitute a saving in her case?

In the case of *Harrison* v. *Gibson and Others*, 23 Gratt. 223, this court said : "It is urged that the female complain- ants were infants at the death of their mother; to which was superadded the disability of coverture. . . . It is true they were *femes covert*, and so continued to the insti- tution of this suit. But the bill in this case, though in the

name of husbands and wives, is the bill of the former only; for it is well settled that every bill by husband and wife, jointly claiming in right of the wife, is the act of the husband, though in right of his wife. She is, however, joined for conformity. . . . In this case, the husbands were under no disability, and they could have filed their bill as easily in 1840 or 1841 as in 1854. At that time John Gibson, Jr., was alive, . . . and although the time which has elapsed since the death of Mrs. Waggoner may not of itself constitute a statutory bar to the claim, still the unaccountable neglect of the parties for fourteen years thereafter to prosecute any suit, when considered in connection with the other circumstances, is very persuasive against the equity and justice of that claim, and I think fully justified the court below in dismissing the bill."

In the case of *Caperton* v. *Gregory,* 11 Gratt. 505, this court said: "The counsel for the defendants here seek to exempt some of them by bringing them within the proviso in favor of *femes covert* and infants. . . . In regard to an infant, it has been decided that the right of action exists continually, from its accrual until the end of the time allowed after the disability is removed. . . . However this may be as to such persons, a *feme covert* stands on a different ground. She and her husband are jointly seized in her right, but the husband has also certain interests in the property, and capacity to dispose of such interests without the concurrence of the wife and against her consent."

After reciting the powers of the husband in that case, this court said further: "If the husband may do all this by direct conveyance, . . . I perceive no reason why he may not allow his or her right of entry to pass away by operation of law. . . . . I am of opinion that no recovery can be had in this action under the title of Call and wife, or that of Ballard and wife."

In the case of *Parsons* v. *McCracken,* 9th Leigh, 501–2,

the judges all concurred that one disability could not be mounted upon another. Judge Parker said : " But suppose she had averred and proved that the disability of coverture occurred before the disability of infancy had ceased, this would bring up the question, whether cumulative disabilities occurring in the same person will prevent the operation of the act? Considering the act as a wise and beneficial statute of repose, intended to quiet titles to property after the lapse of a reasonable time, without working injustice to claimants, I am of opinion that cumulative disabilities ought not to prevent its operation, and that upon a sound construction of the act, a party claiming the benefit of the proviso can only avail himself of the disability existing where the right of action first accrued, since otherwise the assertion of claims might be postponed for the period of the longest life, and possessions disturbed after sixty, eighty, or even a hundred years. It is well settled in England, that if successive disabilities occur in different persons, they afford no protection. *Doe* v. *Jesson,* 6 East, 80. The American authorities go farther, and apply the same rule to disabilities in the same persons, and there is no adjudged case in England to the contrary."

This doctrine was held in the case of *Eager and Wife* v. *The Commonwealth,* 4 Mass. R. 182; *Demorest* v. *Wynkoop,* 3 John. Ch. R. 129; *Jackson* v. *Wheat,* 18 Johns. R. 40; *Bradstreet* v. *Clarke,* 12 Wend. 602; *Thompson and others,* v. *Smith,* 7 Serg. & Rawle, 209 ; *Lewis and others* v. *Barksdale,* 2 Brock. R. 436 ; *Fitzhugh* v. *Anderson,* 2 Hen. & Mun. 289.

Judge Brockenbrough said in the case of *Parsons* v. *McCracken, supra :* " If she (Rebecca Parsons) married after she came of age (a fact not ascertained), her subsequent coverture was not a disability which would obstruct the operation of the statute, and even if she married while yet an infant, we cannot mount one disability upon another so

as to present a continuous obstruction to its operation.    This
is abundantly shown by my brother Parker.    The disa-
bility of infancy ceasing in 1824 and the suit not being
brought till 1833, she is barred by the act."

In the same case Tucker, P., said:  "It is true that Re-
becca was an infant, but she came of age in 1824, when her
disability ceased ; for, notwithstanding some loose opinions
to the contrary, she cannot tack the disability of marriage
to that of infancy."    And all the other judges concurred.
The statute does not run while any disability exists which
existed at the time the right of action accrued.    When all
which existed at that time are removed, the statute begins
to run, and when the statute once begins to run it contin-
ues to run without being impeded by any subsequent event—
*Mooers* v. *White,* 6 Johns Ch. R 372; *Cook* v. *Wood,* 1 Mc-
Cord—and no subsequent disability will stop its running.

In the case of *Ducket* v. *Crider,* 11 B. Monroe, 191, the
right of action which accrued to the female while an in-
fant, and before she married, was lost by the failure to as-
sert it within five years after her arrival at full age ; not-
withstanding that she married before attaining full age
and remained under coverture at the time of the action
brought.    In the light of these authorities, it is clear that
the circuit court did not err in dismissing the suit as to
Hatchett and wife, Mrs. Hatchett having been married
after the disability of infancy had ceased.

But it is equally clear therefrom that the said circuit
court did err in adopting a different rule as to Bragg and
wife, because Mrs. Bragg was married before she became
of full age, before the disability of infancy had ceased.

Bragg and wife might have brought their suit as well in
1858 as in 1877, and their failure to do so until after the
administrator had been dead many years, is not explained
by the statement of confidence in the administrator.    The
deposition of Bragg shows that the relations between him-

self and the said administrator became very unpleasant soon after his marriage, in consequence of his alleged maltreatment of one of the female slaves of Mrs. Hatchett, then unmarried, and for other reasons.

But it is strenuously insisted on the part of the appellees that the decree in the suit of Blackwell and wife v. Ro. Blackwell and Constance E. Penn (now Mrs. Bragg), and Lucy E. Penn (now Mrs. Hatchett), was not a suit to settle the transactions of the said Ro. Blackwell as the administrator of Upton E. Hardy, and that under the pleadings in that suit the county court had no authority to cause the settlement which was had of his said transactions, and to decree the payments made thereunder, and that their answers were defective, &c.

Now, as we have seen, the bill was filed by their sister, Sally O., who had married William Thweatt Blackwell, and her said husband, against the said administrator, and themselves, alleging that Upton E. Hardy died possessed of slaves, &c., and that they desired partition of the said slaves, or sale and distribution of the proceeds; that they prayed for "all equitable relief in the premises," &c.; that the slaves were sold, the proceeds brought into court and distributed, and the said administrator ordered to settle his transactions as administrator, which was done, the amount due to each of them respectively ascertained and decreed to them respectively, and paid accordingly. The county court was a court of general jurisdiction; having jurisdiction of the parties and of the subject matter upon which it acted, and it cannot be successfully contended that the said court did not have jurisdiction to compel the settlement of these accounts and to compel payment under its decrees; and having passed upon the identical subject sought to be reopened by this suit, to-wit: to ascertain the amount due from the said administrator, as administrator of Upton E. Hardy, and to have a decree for payment of

the same to the parties entitled thereto, the subject appears to be *res judicata*, with the saving to such of the parties, provided by statute, as were at the time under the disability of infancy.   In the case of *Adams, Hamner & Co. and others* v. *The Shenandoah Valley Railroad Co. and others*, decided by this court November 16, 1882, and reported in 76th Va. Rep. p. 913, along with other cases heard with that case, Judge Lewis, in delivering the unanimous opinion of this court, said upon this subject: "It is a familiar maxim in our jurisprudence that no person shall be twice vexed for one and the same cause. Therefore, a judgment of a court of competent jurisdiction directly on the point is, as a plea, a bar, and conclusive between the same parties upon the same matter directly in question in a subsequent action; and in this there is no difference between a verdict and judgment in a court of common law and a decree of a court of equity.   Both stand on the same footing.   The rule has found its way into every system of jurisprudence, not only from its obvious fitness and propriety, but because without it an end would never be put to litigation.   *Hopkins* v. *Lee*, 6 Wheat. 109.   The doctrine of *res judicata* applies to all matters which existed at the time of giving the judgment, or rendering the decree, and which the party had the opportunity of bringing before the court."   Citing 7 Robinson's Practice, 172, he further said: "There is no relief prayed for in this which the appellants could not have obtained in that suit, if entitled thereto.   There are no material averments in the bill in this case which could not have been investigated and passed on in that, and which in effect were not passed on by the final decree in that case.   If, therefore, the appellants have been denied relief to which they were entitled, their appropriate remedy for the correction of the error was by appeal from the decree in the Griffith suit."

In the case of *Aurora City* v. *West*, 7 Wall. 82, 103, Mr.

Justice Clifford, delivering the opinion of the supreme court of the United States, said: "Courts of justice, in stating the rule, do not always employ the same language; but where every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented at that trial, the matter must be considered as having passed in *rem judicatam,* and the former judgment in such a case is conclusive between the parties."

In the suit of *Blackwell and Wife* v. *Upton E. Hardy's Adm'r,* all the errors now sought to be corrected in this suit were apparent on the face of the proceedings and the settled accounts. Why could they not have been corrected in that suit?

In the case of *Corbin* v. *Mills,* 19 Gratt. 438, relied on by the appellees, Judge Joynes said: "The executors might have objected to the overhauling of the transactions embraced in their settled accounts, except so far as they might have been open to objections apparent on their face, on the ground that there was no specification of error in the bill."

These errors were apparent on the face of the accounts, and any party to the suit might have objected to their confirmation by the court, if he so desired.

It is not necessary to the conclusiveness of the former judgment, says Mr. Freeman, that the issue should have been taken upon the precise point which it is proposed to controvert in the collateral action. It is sufficient, if that point was essential to the former judgment. Every point which has been specifically decided, or by necessary implication an issue which must have been decided, in order to support the judgment or decree, is concluded. *Lee* v. *Kingsbury,* 13 Tex. 68; *Supervisors* v. *Mineral Point R. R. Co.,* 24 Wisc. 124.

The estoppel is not confined to the judgment, but extends to all facts involved in it as necessary steps, or the

groundwork upon which it must have been founded. It is accordable to reason, back from the judgment to the basis upon which it rests, upon the obvious principle that when a conclusion is indisputable, and could have been drawn only from certain premises, the premises are equally indisputable with the conclusion. *Burlen* v. *Shannon*, 99 Mass. 200. If the precise question at issue here was not actually raised and specially passed upon in the first suit, it obviously might have been.

In the case of *Le Guen* v. *Gouverneur & Kemble*, 1 Johns. Cases, 436, Judge Radcliffe said : " The principle, however, extends farther. It is not only final as to matters actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have had decided." 3 Atk. 224; 2 H. Bl. 414; 7 T. R. 269; 1 Vernon, 176; 2 Cas. in Ch. 95; Ch. Rep. 243; 2 Burrow, 1009.

The appellees, the plaintiffs in the circuit court, are barred by the decree entered in the first suit in 1854, from correcting the erroneous payment in the year 1852, the question having been settled, in effect, in that suit.

The appellees, Bragg and wife, and Hatchett and wife, plaintiffs in the circuit court, not having appealed from so much of the decree of October term, 1881, as dismissed their bill as to the sureties of the guardian, who were defendants in the circuit court, and are appellees in this court, are not entitled, as against their co-appellees, to ask the correction of that part of the decree. *Walker's Ex'or* v. *Page*, 21 Gratt. 636; *Tate* v. *Liggat*, 2 Leigh, 84; *Buckholder* v. *Ludlam*, 30 Gratt. 255.

The appellants, Mrs. Bragg and Mrs. Penn, are both barred by the decree in the first suit—and the fact that one married before coming of age and the other afterwards, does not appear to be a material distinction; and the circuit court erred in so deciding, and the said decree must be reversed and annulled, so far as the same is in conflict with

the foregoing views, and a decree entered dismissing the bill as to both.

The decree was as follows:

This day came again the parties, by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the circuit court of Dinwiddie did not err in the decree therein rendered at the October term, 1881, appealed from, in deciding that the complainants, Llewellen Hatchett and Lucy E., his wife, had lost their right against Robert Blackwell's estate, by reason of the various errors in the settlement of his accounts, as set up in their original and amended bills filed in the cause, and in dismissing this suit as to them, and in deciding that there is no liability upon the estate of Robert Blackwell, deceased, on account of his transactions as guardian of Upton E. Hardy, deceased, and in dismissing the bills of the plaintiffs as to the defendants, J. W. Ellis, sheriff of Lunenburg county, and as such administrator *de bonis non* of William Wilkerson, deceased, and George Hardy, executor of Elisha Hardy, deceased, the said William Wilkerson and Elisha Hardy having been the sureties of the said Robert Blackwell, as guardian of the said Upton E. Hardy.

But the court is of opinion that the said circuit court of Dinwiddie did err in the said decree, in deciding that the said William J. Bragg, trustee for his wife, Constance E. Bragg, and the said Constance E. Bragg are not barred of their right to proceed against the estate of the said Robert Blackwell, deceased, and in referring it to one of the commissioners of the court to restate and resettle the accounts of said Robert Blackwell, as administrator of Upton E. Hardy, deceased.

Decree.

It is therefore considered by the court that the said decree be reversed and annulled, so far as it is in conflict with the foregoing opinion and the views herein, and that the appellee, William J. Bragg, trustee, as aforesaid, and Constance E. Bragg do pay to the appellant his costs by him expended in the prosecution of his appeal aforesaid here.

And this court, proceeding to render such decree as the circuit court ought to have rendered, doth decree and order that the bills of the plaintiffs be dismissed, and that the plaintiff, William J. Bragg, trustee, and Constance E. Bragg do pay to the defendants their costs by them in their defence expended in the said circuit court. Which is ordered to be certified to the said circuit court of Dinwiddie.

DECREE REVERSED IN PART.