## Richmond.

## LEGRAND AND ALS. V. RIXEY'S ADM'R AND ALS.

### NOVEMBER 10th, 1887.

1. PRINCIPAL AND SURETY—*Extension of time—Release of surety.*—In order to prevent sale under trust-deed, husband of one of two obligors and his wife assigned to obligee their interest in a judgment. They agreed that, in consideration of an extension ot time, husband should at stated times make payments ; if these were not made, there should be sale under trust-deed. He failed. Trustee advertised sale. The other obligor and said husband enjoined.

HELD :

> This agreement did not release the other principal debtor, nor postpone the liability of her interest to sale under trust-deed.

2. RES JUDICATA—WHAT IS ?—A judgment of a court of competent juris-diction upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties ; and all matters presented or presentable *under the issue,* either to sustain or to defeat the demand litigated in the prior suit, are concluded by the judgment in such prior suit. But to this operation of the prior judg-ment it must appear, either from the record or by extrinsic evidence, that *the precise question* was raised and determined in the prior suit.

3. IDEM—*Opinion of trial judge—Case at bar.*—In bill for injunction, a former decree was pleaded as *res judicata.* That decree did not show which of the points in controversy it was based on. It referred to the opinion of the trial judge.

HELD :

> That opinion by this reference became part of the record, and must be examined to determine what points were in issue, and what were adjudicated by the decree.

4. IDEM—*Former decree—Case at bar.*—Obligor of bond secured by trust-deed on certain land filed his bill, alleging that the security was not

sufficient to pay his debt that was then overdue, and praying that the separate property of a married woman, one of the obligors of the bond not embraced in the trust-deed, be applied to its payment. This prayer was denied and the injunction dissolved.

HELD :

This question, of his right to have her separate property applied, was the only point that was adjudicated in that suit.

Appeal from decree of circuit court of Fauquier county, rendered seventeenth April, 1885, in the cause of E. A. Legrand and Lucy B., his wife, complainants, against Samuel Rixey, James Barbour, trustee, J. C. Gibson and Mary G., his wife, defendants.

Mrs. Legrand (then wife of Chas. E. Sinclair) and James G. Field, her trustee, and Mrs. Gibson (then Mary G. Shackleford), by trust-deed dated October 16th, 1867, conveyed their interest in "Elk Spring Farm," in Culpeper county, to James Barbour, trustee, to secure the bond executed by the female grantors, of that date, to Samuel Rixey for $3,180 for borrowed money, and payable, with interest, three years after its date.

By decree of the circuit court of Culpeper county, at its November term, 1867, Mrs. Sinclair was divorced *a vinculo* from her husband, C. E. Sinclair, and later became the wife of E. A. Legrand, who died pending this suit. And in January, 1870, Mary G. Shackleford intermarried with J. C. Gibson. By a writing dated July 27th, 1872, Gibson and wife assigned to Rixey their one-third in a decree for $2,500 against George Ross' executor, to be applied, *when collected*, as a credit on said bond. And by an instrument signed and sealed by J. C. Gibson, and dated June 26th, 1873, reciting that said bond was then due and collectible, and that J. C. Gibson desired further indulgence, and was unwilling to have said trust-deed closed, in consideration that Rixey would not proceed to close said deed, he (J. C. Gibson) agreed to pay down in cash all interest due on the

bond, and annually to pay thereafter, on the twenty-sixth of June, the sum of $500 until the bond was fully discharged; but that should default be made in the prompt payment of said instalments as they become due, or any of them, Rixey reserved the right to collect whatever might be due on the bond, by sale under the trust-deed.

It was further agreed by said instrument that whatever money should be collected under the assignment of said decree against George Ross' executor should be applied to the instalment for the year such collection was made until one instalment was paid, and the balance as a credit on said bond, and that all other notes, bonds, decrees or judgments assigned, or promised to be assigned, by J. C. Gibson to Rixey, as further security for said bond, were thereby re-assigned and released by Rixey to J. C. Gibson, without any recourse whatever upon Rixey.

The interest on said bond up to twenty-sixth of June, 1873, was accordingly paid. On the twelfth of April, 1875, J. C. Gibson paid the additional sum of $50, which was all that was paid on said debt up to August, 1875, when Rixey instituted his suit in chancery in the circuit court of Culpeper county against J. C. Gibson and wife, Lucy B. Shackleford (formerly Sinclair), James G. Field, her trustee, and James Barbour, trustee.

The bill, after reciting the execution of the said bond and of the said trust-deed, and of the assignment of the interest of J. C. Gibson and wife in the decree against Ross' executor, and the agreement of J. C. Gibson to pay the debt in annual instalments, and his default in paying the instalments which had become due, then set forth that said Lucy B. Shackleford (afterwards Legrand) owned as her separate estate one-third of the said decree against Ross' executor, and other separate estate not included in said trust-deed, which was in or was coming to the hands of her trustee, Field, which he would pay over to her,

unless restrained, and which he (Rixey) was entitled in equity to subject to the payment of the said bond; and that it was necessary for him (Rixey) to subject it to that bond, because the trust property and the other securities held by him were inadequate to discharge said bond, by reason of the depreciation of the property; and prayed that said Field be enjoined from paying to said Lucy B. Shackleford (formerly Sinclair), or to any other person, and that the said Lucy B. be enjoined from collecting from said Field or any other person her share in said decree; that said Field state what amount he had received on said decree as the shares of said Lucy B. and of Gibson and wife, and that his debt be paid out of the separate estate of said Lucy B. and out of the interest of Mrs. Gibson in Elk Springs, and the moneys due her under said decree, and that a sale of the several interests of those female debtors in said real estate be decreed and the proceeds applied to said debt, and for general relief.

The defendants demurred and answered. By her answer, Lucy B. resisted the pretensions of the plaintiff, Rixey, upon the ground, first, that by the agreement between Rixey and J. C. Gibson of June 26th, 1873, her relation to the $3,180 debt became entirely changed; that Rixey, by changing the mode of payment, recognized it as the debt of J. C. Gibson, &c.; and in consideration of $323.30 (the balance of interest up to the date of said agreement), extended the time of its payment and thereby (if he did not discharge her from all responsibility for the debt) obligated himself to resort to the Elk Spring farm alone for any balance that might not be paid by J. C. Gibson; and moreover, that the debt had been paid by the assignment made by J. C. Gibson to Rixey of debts, &c., amounting to a greater sum; and, secondly, that while it was true that she was a *feme covert* with a separate estate when she executed the bond, yet its execution created no lien on her

separate estate or right to interfere with her control and disposition of it any more than if she had been a *feme sole;* and that there was no ground for the injunction.

J. C. Gibson, by his counsel, relied on the ground that the agreement of June 26th, 1873, was a subsisting and binding; and insisted that although the instalments of $500, per annum, due by it might not have been received by Rixey when his suit was commenced, yet it was his own fault in not collecting promptly the Ross decree, and that he might have done so by due diligence, and averred that Rixey had collected it since the commencement of his suit, and that he had assigned Rixey several solvent judgments to pay said debt, which he had partly collected and had never re-assigned. It was admitted by Rixey that Field had paid him out of Gibson and wife's interest in the Ross decree $975 as of thirtieth September, 1875.

The injunction had been granted as prayed for. And the cause having been removed to the Amherst circuit court, it was then heard on the thirteenth of October, 1876, upon the bill, answers, and exhibits and demurrer; and, having overruled the demurrer, "for reasons stated in a written opinion filed with the papers," it was decreed that the injunction be dissolved and the bill dismissed, with costs to the defendants. In the concluding paragraph of its written opinion the court proposed to allow an account to be taken of the balance due on the debt, or of the credits J. C. Gibson might be entitled to by reason of alleged assignments and of sums collected thereon by Rixey, or which he might have collected by use of due diligence, if either party desired such account. It does not appear, however, that such account was either taken or desired.

Subsequent to said decree of the Amherst circuit court, and during the next year, James Barbour, trustee in said deed of trust, advertised that he would, on the sixteenth of July, 1877, sell the Elk Spring farm at public auction,

at the front door of Culpeper court-house, for cash. In the trust-deed no place or terms of sale were prescribed.

On the day appointed for the sale, Lucy B. Legrand (formerly Sinclair) and E. A. Legrand, her husband, obtained an injunction to the sale. In their bill, to which Samuel Rixey, James Barbour, trustee, J. C. Gibson and Mary G., his wife, were made defendants, there is set forth the execution of the trust-deed, the payment of large sums on the debt secured thereby, the agreement of June 26th, 1873, between J. C. Gibson and Rixey; payments by the former to the latter; that Rixey could have made the balance out of Gibson by suit at any time up to the year 1877, but that execution would then be unavailing against him. It was complained that the sale was advertised to be made for cash, and that such sale would cause a sacrifice of the property, and that the sale was advertised to be made to pay the whole amount specified in the trust-deed, when several thousand dollars had been paid; and it was insisted that their interests were not liable under said trust-deed, because Rixey had, by his acts and doings in the premises, released them; and, after calling on the defendants to answer, the bill concluded with a prayer for the injunction and for general relief.

The cause having been removed to the circuit court of Fauquier county, Legrand and wife filed an amended bill. In it, among other things, they set out the record of the the said suit of Rixey against Gibson and others, and alleged that the matters and things in issue in that suit, and the parties, were the same as those in this suit, and that the legal effect of the decree of the circuit court of Amherst county therein of October 13th, 1876, was to determine that said Rixey had no right to sell, under the trust-deed, the interests of Lucy B. Legrand and Mary G. Gibson in Elk Spring farm, and that said decree is conclusive against Rixey's claims in that behalf; and that,

in fact, the matters and things in this suit were *res judicata.*

Defendant, Rixey, answered both the original and amended bill, and denied that he had by his agreement with Gibson of June 26th, 1873, or otherwise, released the plaintiff's interest in Elk Spring farm; denied that he had taken from J. C. Gibson any assignment whatever of any *choses* in action since June 26th, 1873, or that he had not reassigned to him all those which had been previously assigned to him (Rixey), except the Ross decree; denied that any payments had been made on said debt except the interest up to June 26th, 1873, and $50 paid April 12th, 1875, $975 paid by Field September 30th, 1875, and $25 paid in lumber in the fall of 1875; and insisted that the balance due and unpaid on the said $3,180 bond, as of thirtieth September, 1877, was $2,871.78, with interest on $2,586.42, part thereof, from the date last aforesaid. He filed with his answer the written opinion of G. A. Wingfield, judge of the circuit court of Amherst county, which the decree rendered by that court on thirteenth October, 1876, in said cause of Rixey against Gibson and others, states, was filed with the papers in that cause, and contained the reasons therefor, and which the plaintiff failed to file as a part of that record. And, in his answer, Rixey denied that the matters and things set up in the plaintiff's bill were adjudicated in the cause of Rixey against Gibson and others, and takes issue upon the plea of *res judicata.*          .

The defendants, J. C. Gibson and wife, also answered. Their answer appears to be more in response to the answer of their co-defendant, Rixey, than to the plaintiff's bills. They insist that the matters and things in this suit have been already settled conclusively by said decree of the circuit court of Amherst county, and they set up the plea of *res judicata,* in order, they say, "to settle forever this vexatious litigation." Much of this answer is appropriated

to a discussion of this plea and of the said written opinion, which, they contend, is not a part of the record and is entitled to no weight whatever in the consideration of said plea. They claim to have paid more than Rixey's answer admits, but claim that J. C. Gibson had assigned to Rixey notes, bonds and judgments whereon he had collected large sums of money and failed to give credit therefor, and had not re-assigned any thereof to J. C. Gibson.

No depositions were taken on either side. The judge of the circuit court of Fauquier county, to whom this cause had been submitted for decision in vacation, on the seventeenth of April, 1885, entered the following decree:

"Upon consideration of this cause, the court being of opinion that the enforcement of the debt due Samuel Rixey is not barred by the dismission of the bill in Rixey against Legrand and others, decided by the circuit court of Amherst county; and being further of opinion that the complainant, Lucy B. Legrand, is not released as to the debt secured in the said deed of trust, and that the tract of land conveyed in the said deed of trust and known as Elk Spring, is liable under said deed of trust to the payment of the debt to Samuel Rixey, therein secured, doth adjudge, order and decree that a master commissioner of this court take and report an account showing the balance now due upon the debt to Samuel Rixey, secured by said trust deed."

From this decree Lucy B. Legrand and J. C. Gibson and Mary G., his wife, obtained from one of the judges of this court an appeal and *supersedeas*.

*J. C. Gibson*, for appellants.

*W. L. Jeffries, J. F. Rixey* and *D. A. Grimsley*, for appellees.

RICHARDSON, J., after stating the case, delivered the opinion of the court.

The single question presented by the record for decision, is whether or not the facts disclosed by the record sustain the plea of *res judicata* relied on by the appellants to bar and defeat the claim of the appellees to sell the Elk Spring farm, under the trust-deed aforesaid, to satisfy so much of the $3,180 bond as remains unpaid.

That such is really the only question to be passed on is indisputable; for, so far as the evidence goes, there is nothing in the record which can be successfully appealed to for the purpose of disproving the statement of Rixey, that the sum of $2,871.78, with interest on $2,586.42, part thereof, from thirtieth September, 1877, remained due and unpaid on that day.

It is true that the appellant, J. C. Gibson, in his answer affirms that he assigned to Samuel Rixey certain specified debts and judgments which were good, and which said Rixey never re-assigned to him, but on which, it is alleged, he collected large sums that were not credited on said bond. But of this there is no proof in the record. On the contrary, the agreement of June 26th, 1873, which J. C. Gibson set up as a subsisting and binding agreement in his answer filed in the Amherst suit, has a strong tendency in favor of Rixey's statement that he did re-assign all the *choses* in action that Gibson had assigned to him, except the interest of Gibson and wife in the Ross decree. That instrument has been referred to already, and in substance of it stated. It is as follows:

" Articles of agreement made this twenty-sixth day of June, 1873, between J. C. Gibson, of the first part, and Samuel Rixey, of the second part, witnesseth, that whereas said Rixey holds the bond of M. G. Shackleford, now the wife of said Gibson, and L. B. Sinclair for $3,180, pay-

able three years after date, with interest from date, and dated the sixteenth day of October, 1867, secured by deed of trust upon certain real estate, and also by an assignment of the interest of said Gibson and wife in a decree of the circuit court of Culpeper in the suit of Shackleford against Ross, which assignment is in the hands of James G. Field; and, whereas, the said bond is now due and collectible, but the said Gibson desires further indulgence and is unwilling to have the said deed of trust closed; now, then, in consideration that said Rixey will not proceed to close said deed, the said Gibson agrees to pay down in cash all interest due on this bond, and annually to pay hereafter on the twenty-sixth June, the sum of five hundred dollars until the said bond is fully discharged. And the said Rixey agrees that, in consideration of the payment of said interest in cash and the prompt payment of said instalments as they become due, he will not close the said deed of trust; but should default be made in the prompt payment of said instalments, or any of them, then the said Rixey reserves the right to collect whatever may be due on said bond by sale under said deed of trust. The parties further agree, that whatever money is collected under the assignment of the decree in the suit of Shackleford against Ross shall be applied to the instalment due for the year the said collection is made until one instalment is fully paid; the balance of the collections under said assignment shall be applied in discharge of the instalments last becoming due; all other notes, bonds, decrees or judgments assigned or promised to be assigned by said Gibson to said Rixey as further security for said debt are hereby re-assigned and released by said Rixey to said Gibson without any *any* recourse whatever to said Rixey.

"Given under our hands and seals this twenty-sixth day of June, 1873.

"(Signed)      J. C. GIBSON, [Seal.]
"——  —— [Seal.]

"It is understood and agreed that the proceeds of the debt against William B. Ross, above described, assigned to said Rixey, shall be credited on said bond of $3,180.00, as of date of collection, and to the amount of five hundred dollars shall be credited on the instalment first due thereafter, and the balance of said claim, when collected, shall be applied as a general credit on said bond as of the date of such collection. Given under our hands and seals this twenty-sixth June, 1873.

" J. C. GIBSON, [Seal.] .<br>
"———  ——— [Seal.]"

Upon this agreement is this endorsement:

"June 26th, 1873. By check of J. C. Gibson, on Citizens' National Bank, for $323.30, in full of interest payment provided for within. (Endorsed on bond also.)"

It will be observed that the agreement is not signed by Rixey, and why it is not so signed is not explained in the record. But Gibson refers to and relies upon it in his answer to Rixey's bill in said former suit, in which we find this statement:

"On the twenty-sixth of June, 1873, respondent and complainant entered into an agreement in regard to the payment of the $3,180 Shackleford bond. Complainant agreed that if respondent would take back all the judgments, decrees, notes, bonds which respondent had assigned on the record in writing, or verbally, except the Ross-Wise debt, that he, the complainant, would permit payments in instalments of $500 annually. At the time this arrangement was proposed it was supposed .that the Ross debt would be realized out of the proceeds of the Warm Springs property, of Bath county. Some time during the succeeding August, when the contract was presented to respondent for his signature, he found that complainant had provided that only $500 of the Ross debt should be applied to the payment of the instalments as they fell due,

and that the balance should be credited upon the last instalment—in other words, that the money first paid should, except as to $500, be last credited, and that respondent should lose the interest for some seven or eight years upon a large sum of money. Respondent refused to sign any such contract, as being contrary to the understanding verbally agreed to between them. But, through the interposition of General James G. Field, who acted as a mutual friend to both parties, an understanding was arrived at. Respondent agreed that the first instalment should be paid as soon as the Ross money was collected, but should not be considered paid until the said instalment fell due, and that respondent would lose the interest on the sum of $500 so applied for the period of time between said payment and the ensuing twenty-sixth of June; but the balance of the Ross debt should be credited generally on the bond by the complainant, should bear interest as soon as collected, and should be applied to the instalments as they fell due. Respondent had some difficulty in finding out what complainant was driving at, but as soon as he discovered that an attempt was being made to get a monstrous advantage of him upon a question of interest, he repudiated the contract as drawn by complainant, and put an addendum to it, altering it as above set forth. Respondent had supposed that the provision as to applying the Ross debt to last instalment had been stricken out, and thinks that his copy so reads."

So, too, in their bill in this suit, Legrand and wife evidently refer to and call for the production, by Rixey, of this same agreement of June 26th, 1873. They say:

"Your orator and oratrix allege and charge that there were two separate understandings and agreements between the said J. C. Gibson and Samuel Rixey in regard to the securing and payment in instalments of said debt, but they are ignorant whether or not the first agreement was in

writing, except as evidenced by said assignments; but they allege and charge that the second aforesaid agreement was in writing, and this writing was under, and is now under, the control of the said Rixey, and call for the production of same."

In response, Samuel Rixey in his answer says: "This respondent, in response to so much of the complainants' bill as calls for the original *assignment*" (evidently meaning *agreement*), "states that he has not the original *assignment* of twenty-sixth June, 1873, in his possession (if that be the paper referred to in said bill); that the same is in the possession of James G. Field, the trustee of said Lucy B., and who was her attorney in said former suit; that the copy to be found in said record (page 20) is, as affiant believes, a true copy of said original."

Thus, in the light of said averments in the answer of J. C. Gibson in the former suit, in the bill of Legrand and wife in this suit, and in the answer of Samuel Rixey to the latter, it appears with reasonable certainty that Samuel Rixey wrote the original draft of the agreement of June 26th, 1873, and presented it to J. C. Gibson for his signature; that the latter repudiated and refused to sign it, because it was not according to the previous verbal agreement in so far, and only so far, as it provided the manner of applying the proceeds of the Ross decree, as collected, and that J. C. Gibson thereupon wrote the addendum, changing the agreement as written in that particular only; that Rixey acceded to the change thus made, and that Gibson thereupon signed the agreement and addendum, and, reserving a copy, delivered the original to Rixey, who delivered it to James G. Field, the trustee and counsel of Lucy B. Legrand, said Rixey taking the copy thereof which appears in the record; that the arrangement was completed by the payment by Gibson to Rixey of $323.30, in full of the interest payment provided for in said agreement; and

when called upon in the bill in this suit to produce the original, Rixey responded that it was not in his possession, but had been delivered to James G. Field, and referred to the copy retained and filed by him as a true copy of the original.

In the light of these circumstances we can readily understand why it was not deemed essential, and why Rixey did not sign the agreement of June 26th, 1873; for by the alteration therein effected by the addendum the only provision in the original which was advantageous to Rixey was wiped out, and the agreement thus altered became simply Gibson's obligation, under seal, to perform the conditions upon which Rixey extended indulgence to him and those represented by him on the debt secured by the trust-deed. If the arrangement was not so understood and perfected by the parties, it is inconceivable why Gibson not only signed and delivered the paper of June 26, 1873, and retained a copy, but actually then made the cash payment of interest due as stipulated for in the agreement, which payment is endorsed on the agreement, and is of even date therewith.

Moreover, we find in the record the assignment, in writing, of J. C. Gibson and wife of July 27th, 1872, to Samuel Rixey, which embraces the Ross debt only. There is no evidence in the record of the assignment of other debts by Gibson to Rixey, or of re-assignment by the latter to the former, except what is found in the subsequent agreement of June 26th, 1873, and therein we find a provision for the retention, collection and application of the Ross debt; and it is also therein distinctly set forth: "all other notes, bonds, decrees or judgments assigned or promised to be assigned by said Gibson to said Rixey as further security for said debt, are hereby re-assigned and released by said Rixey to said Gibson without any recourse whatever to said Rixey." This is what J. C. Gibson himself says was done. There

is in the record nothing to explain it away, or to lessen its necessary effect. It would seem, then, that the conclusion is irresistible, that J. C. Gibson and those he represented are bound by the plain terms of the agreement itself. The very terms of the agreement forbid any other conclusion.

Nor could the agreement of June 26th, 1873, have the effect ascribed to it in the bill of Legrand and wife, *i. e.*, to release Mrs. Legrand's interest in Elk Spring farm from liability under the trust-deed, by reason of extending the time of the payment of the debt secured thereby. She was not the surety of Mrs. Gibson, but a principal debtor and co-obligor. Nor, after Gibson's default in paying the annual instalments, could said agreement operate to postpone the liability of her said interest to sale under said trust-deed.

It is obvious, then, that the case hinges on the naked defense of *res judicata*—that is, that Rixey is estopped by the proceedings in said former suit from enforcing his trust-deed *in pais* for the collection of the debt secured thereby.

It is well settled in Virginia that a judgment of a court of competent jurisdiction upon a question directly involved in one suit is conclusive as to that question in another suit between the same parties. And it is also settled that all matters presented and received, or presentable to *sustain* the particular demand litigated in the prior suit, and all matters presented or presentable *under the issue to defeat* such demand, are concluded by the judgment or decree in such former suit. But to this operation of the judgment or decree, it must appear either upon the face of the record, or be shown by extrinsic evidence that the precise question was raised and determined in the former suit. If by the record there be any uncertainty in this respect—as, for example, if it appears that several distinct matters may have been litigated, upon one or more of which the judg-

ment or decree may have passed, without indicating which of them was thus litigated, and upon which the judgment was founded—the whole subject-matter of the suit will be at large and open to a new contention, unless such uncertainty be removed by extrinsic evidence showing the precise point involved and passed upon. And to apply the judgment or decree, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible. *Russell* v. *Place*, 94 U. S. 608; *Chrisman* v. *Harman*, 29 Gratt. 499; *Ins. Co.* v. *Clemmitt*, 77 Va. 366; *Frazier* v. *Frazier*, Id. 775; *Blackwell* v. *Bragg*, 78 Va. 529; Wells on Res Adjudicata, § 282; Freeman on Judgments, § 256; *Packet Co.* v. *Sickles*, 5 .Wall. 580.

If, in case the record leaves a doubt as to which of several matters may have been passed upon, parol evidence may be admitted to solve the doubt, what possible objection can there be to the consultation by the appellate court, for that purpose, of the written opinion of the judge who heard and decided the case below. In the case at bar, the trial judge *filed with the papers in the cause* his reasons for his decision, which the decree itself shows was done for the express purpose of explaining his decision. This being the case, the opinion of the trial judge thus referred to in the decree becomes a part of the record, and may be looked to, and is even more reliable to explain, in doubtful cases, what was *in issue* and what was determined, than mere extrinsic evidence to the same end. We do not mean that the mere opinion of the trial judge, which may happen to be in writing and copied into the record, constitutes a part thereof; but we do say that where the decree—as in this case—refers to the opinion of the trial judge in terms that make it clear that the object was to refer to it to explain what was determined, and the reasons therefor, then such opinion becomes legitimately a part of the record, and must be looked to to explain what was *in issue*

and what was determined by the judgment or decree in question. See *Burton* v. *Mills,* 78 Va. at p. 470.

A mere casual view of the bill and answers in the former suit would seem all sufficient to convince any impartial mind that the demand therein litigated and the point involved was Rixey's claim (an unusual and untenable one) to a right to subject to the payment of his debt Lucy B. Legrand's separate estate not included in the trust-deed executed to secure his debt.

With the view to clearly display Rixey's said alleged right, he, Rixey, gives a history of the $3,180 debt secured by the trust-deed, and of the Gibson assignment and agreement to pay the debt thus secured in annual instalments, and his default and the depreciation of the securities for his debt, which rendered them, as he alleged, inadequate, and Mrs. Legrand's separate estate outside of the trust property, and the necessity he was under, and the right he possessed, to resort to it for the full discharge of his debt. And he prayed for disclosures by Field, her trustee, as to how much had been collected and what had been done with it. And finally he prayed for an injunction to prevent Field from paying it over and Mrs. Legrand from collecting the same; so that such separate estate outside (outside of the trust property) might be preserved and applied to his debt. This is *the demand* which *was presented* for litigation; and Mrs. Legrand resisted it by contending that the fact that she was a *feme covert* when she executed the bond and the trust-deed no more gave Rixey a lien on her separate estate not embraced in the deed of trust than if she had then been a *feme sole, &c.*

The injunction, which had been granted precisely as prayed for, was at the hearing dissolved without explanation in the decree, but with full explanations in the written opinion of the trial judge referred to in the decree.

Such was the procedure in the former suit. Rixey, the

beneficiary, did not go into equity to have the trust administered. There was no necessity for so doing, as he had the undoubted right to enforce the trust *in pais.* He did not pray to have determined either the validity of the trust-deed or the amount of the debt secured thereby. Nor does the language of the decree dissolving the injunction and dismissing the bill have any application to either the one or the other of these questions, but applies solely to the claim of Rixey to go beyond the trust property and have subjected to his debt the separate estate of Mrs. Legrand not embraced in the trust-deed, and for which he had no evidential equity. It was this, and only this, unusual and ill-founded claim that Rixey sought to establish at the hands of a court of equity, and it was this, and only this, that was passed upon and denied him in the former suit. The decree in that suit, in effect, said: " You assert a lien as to property not embraced in your trust-deed, as to which you have no lien; and this being the prime object of your bill, the court dissolves your injunction which restrains Mrs. Legrand from the use and enjoyment of her separate estate outside of the real trust property, and dis· misses your bill."

No argument can be necessary to establish the justice and propriety of such a decree; nor can it be necessary to do more than look to the pleadings in said former suit (leaving out of view the written opinion of the trial judge) to see and understand that the one and only object was to extend Rixey's lien to property not embraced in the trust-deed to secure his debt. That much the decree in the former suit decided for Mrs. Legrand, and no more. Hence, the injunction was properly dissolved and the bill dismissed; and hence, too, the judge, in his written opinion in said former suit, says: " This suit is brought to recover the share of the defendant, Lucy B., of the debt due from Ross' executor and recovered by her trustee, J. G. Field, as

well as her interest in a certain house and lot, claiming that it is her separate estate, in satisfaction of the bond of $3,180, and for an injunction to restrain said trustee from paying over the amount received from Ross' executor, upon the ground that J. C. Gibson failed to pay the annual instalments on the said debt, and that the Elk Spring estate is not sufficient to discharge it, and that her other separate estate in other real property and her interest in the debt due from Ross' executor will be necessary (and not more than sufficient) to discharge it."

It was this extraordinary claim asserted by Rixey in the former suit, and this only, that was *in issue*, and it was this that the court refused, and nothing else. Hence it was that the court dissolved the injunction and dismissed the bill. But in doing so, the court, as appears in its written opinion, proposed to retain the cause and have an account taken, *if either side desired it*, to ascertain how much remained due on the debt to Rixey. Here, out of abundant caution, the court below afforded J. C. Gibson ample opportunity to make good the unsupported affirmation that the debt had been discharged; but he chose not to avail himself of the opportunity thus offered; and now, relying on the untenable defense of *res judicata*, he must necessarily fail. But inasmuch as the decree complained of in this suit directs an account to ascertain the true amount due on the debt secured to Rixey by the trust-deed, it is obvious that justice can yet be obtained without hardship upon any party interested.

It must be kept in view that Rixey, the trust creditor, did not bring this suit. On the contrary, when, after long indulgence, he sought to enforce the trust—as was clearly his right—he was enjoined, and hence this protracted litigation; and, as we have shown, the sole obstruction in his path is the utterly untenable defense of *res judicata*. For the reasons already stated, this defense must necessarily

fall to the ground. It follows that the circuit court of Fauquier did not err in holding that the enforcement of the debt due Samuel Rixey is not barred by the dismission of the bill in the former suit of Rixey against Gibson and others, decided by the circuit court of Amherst county, and that the said trust-deed conveying the Elk Spring farm to secure Samuel Rixey is not released or discharged, so far as shown by the record here, as to the debt secured thereby to said Rixey, and that the tract of land conveyed thereby, and known as the Elk Spring farm, is liable, under said deed of trust, to the payment of so much of the debt to Samuel Rixey as remains unpaid.

The rule, *res judicata*, has no application to the case in hand. Rixey has brought no second suit to litigate matters passed upon in a prior suit. The deed of trust to secure him has never been adjudged to be invalid or satisfied. Hence, he is not estopped to enforce it. Hence, too, if any-one is amenable to the charge of seeking to litigate matters once passed upon, it is not Rixey, but his adversaries.

For these reasons, the decree complained of must be af-firmed, with costs to the appellees, and the cause remanded to the circuit court of Fauquier county, with directions that it require an account to be taken of the balance, if anything, remaining due and payable to Samuel Rixey's estate upon the debt aforesaid, and to take such proceed-ings as may be necessary to the enforcement of the said trust-deed for any balance due on the debt thereby secured, and to secure complete justice to all parties interested, in accordance with the views herein expressed.

DECREE AFFIRMED.