## CHARLESTON.

E. F. HARTLEY AND E. C. FRAME, TRUSTEES, ETC. *v.* AULT WOODENWARE COMPANY *et al.*

Submitted September 19, 1922. Decided September 26, 1922.

1. CORPORATIONS—*Creditor Failing to Assert Unsecured Claim Prior to Final Decree in Suit to Distribute Funds Held Estopped by Decree to Participate in Distribution.*

    Where an insolvent corporation has made an assignment of all its property and assets to trustees for the benefit of its creditors, and suit has been instituted by them for the purpose of administering the trust, ascertaining the debts in the order of their dignity and priority and distributing the trust funds, which suit has regularly terminated in a final decree whereby the debts have been so ascertaind and a distribution of all the trust funds in the hands, and to come into the hands of the trustees, decreed to its creditors therein set out; a party to said suit, who has failed to assert his unsecured claim and have it adjudicated prior to the final decree, is estopped thereafter from participation in the trust funds distributable under the final decree. (p. 539).

2. SAME—*Holder of Note Against Corporation Not Presented for Adjudication Before Final Decree, Distributing Assigned Assets, Held Not Relieved From Estoppel by Decree to Participate.*

    In such case failure of the owner of a note to present it for adjudication before final decree, because he was collect-

ing or expected to collect it from endorsers on the note whom
he thought to be solvent, will not relieve him from the es-
toppel.  p. 540).

3.  SAME—*Pendency of Suit Held Not to Relieve Holder of Note
    From Asserting it in Suit for Distribution of Assigned
    Assets Prior to Final Decree.*

    Nor will the pendency of another suit between him and
    the trustees for the purpose of settlement of mutual open
    accounts relieve him from the necessity of asserting his note
    in the suit for distribution of the insolvent's assets prior to
    such final decree.  (p. 540).

Appeal from Circuit Court, Marion County.

Suit by E. F. Hartley and another, as trustees for cred-
itors of the Smith-Race Grocery Company, against the Ault
Woodenware Company and others, to settle the Grocery
Company's affairs, wherein Harvey Shane, receiver of the
Citizens' Dollar Savings Bank, filed a petition for recovery
on two notes against the grocery company.  From a decree
in favor of the bank and the petitioner, the trustees appeal.

*Reversed.*

*E. C. Frame, H. W. Harmer* and *Law & McCue,* for ap-
pellants.

*Kemble White,* for appellees.

LIVELY, JUDGE:

Appellants, Hartley and Frame, Trustees of the Smith-
Race Grocery Company, a corporation, prosecute this appeal
from a decree rendered on the 31st day of December, 1920.

Smith-Race Grocery Company becoming insolvent, made
an assignment to Hartley and Frame as trustees for the ben-
efit of all its creditors, and the trustees instituted a suit at
February, 1915, Rules, against various creditors, including
the Citizens' Dollar Savings Bank and James R. Linn, for the
purpose of administering the trust, ascertaining the assets,
the respective debts owing by the insolvent, the amounts
thereof and their priorities; distributing the assets to the
various creditors in the order of their dignity and priority;
and generally to wind up the affairs of the Smith-Race

Grocery Company. The cause was referred to a commissioner who took evidence and reported in detail the debts against the concern in the order of their dignity and priority. A final decree was entered on May 10, 1917, which confirmed the commissioner's report and ascertained the valid indebtedness existing against the Smith-Race Grocery Company, the amount of each debt and the persons or corporations to whom owing, and directed the trustees, out of the moneys in and to come into their hands belonging to said Smith-Race Grocery Company to pay said recoveries in the order of their dignity and priority as therein set out.

Prior to the date of this decree, Citizens' Dollar Savings Bank owned a $5,000 note executed by J. S. Blackwell, H. W. Huttig and A. K. Silverthorn, dated March 18, 1914, at six months and payable to John W. Moore and Company, which note had been endorsed by the payee to the Grocery company and by the latter company discounted at said bank. This note, which was duly protested and was long past due before the order of reference to a commissioner, was not set up as a claim in that suit. Also, prior to the institution of this suit, J. R. Linn was the owner of a $5,000 note executed by the grocery company, dated June 29, 1912, at four months and payable to themselves, which had been endorsed to various persons, finally coming into the hands of J. R. Linn. Neither was this note set up in the suit to wind up the affairs of the grocery company. Some time after the entry of the final decree this last named note was delivered to Harvey Shane, who in the meantime had been appointed receiver of the bank, in part payment of an indebtedness of Linn to the bank. On January 2, 1920, Harvey Shane, as receiver of the savings bank, presented and filed his petition in the suit of the trustees for settlement of the grocery company's affairs, which was still pending, setting up these notes and asking for a recovery against the grocery company and for payment out of its assets in the hands of the trustees. The grocery company appeared and plead the final decree of May 10, 1917, as a bar to any recovery of the petitioner out of the funds disposed of by that decree.

It appears that the affairs of the savings bank became involved, and Harvey Shane was appointed receiver thereof in March, 1915. The grocery company, prior to its failure, had been depositing its funds in the savings bank, and the mutual accounts of the two corporations were greatly at variance. Hartley and Frame, trustees, instituted suit against Harvey Shane, receiver, at September, 1915, Rules, for the purpose of obtaining a full and complete settlement of the accounts between the two corporations. This cause was referred to a commissioner in 1915, report made, and a decree entered thereon in March, 1917, in which the trustees recovered a judgment against the receiver for $125,917.59. An appeal was granted from this decree to the Supreme Court, and on December 2, 1919, a compromise decree was entered in that court, compromising all the matters in difference arising in the suit, by which the recovery in favor of the trustees and against the receiver was reduced to $18,600. It appears that neither one of the notes, the payment of which is now in controversy on this appeal, was set up in that proceeding; the receiver announcing his intention to assert these notes in the trustees' suit for the windng up of the affairs of the grocery company.

The compromise decree entered in the Supreme Court is also pleaded as a bar to the notes now in controversy. The decree now complained of granted the relief prayed for in the petition, rendered judgment on the two notes, aggregating, with interest, $13,589.60, and ordered the trustees to pay the receiver in discharge thereof such pro rata share of the funds in their custody as would pay the receiver the same pro rata share upon that sum as had been paid or would eventually be paid to all other common creditors of the Smith-Race Grocery Company.

The first question to be considered is whether the bank and its receiver are now precluded by the decree of May 10, 1917, from asserting these notes against the funds in the hands of the trustees. If that question be decided in the affirmative it is not necessary to consider whether the failure of the receiver to set up these notes in the suit for set-

tlement of the accounts between the two corporations, is a bar. A suit by trustees of an insolvent corporation for the purpose of winding up its affairs, ascertaining its assets and liabilities and making distribution, is somewhat similar in procedure to a suit for winding up the affairs of an insolvent decedent's estate by his personal representative. Insolvency to a corporation produces in many respects the same consequences that death does to a natural person. Its affairs go into the hands of trustees or into the courts for administration on its assets; it has ceased to function and its assets can only be used for the payment of its debts. Its stock is worth nothing, and it practically ceases to exist.

The trustees' bill, in effect, is a creditors' bill. The trustees represent not only the insolvent but the creditors also, and have brought both debtor and creditors into court for the purpose of subjecting the debtor's assets to the payment of the debts. The existence, validity and amount of each debt is an important subject of the litigation in the correct ascertainment of which not only the insolvent, but all of the co-defendant creditors are vitally interested.

An inspection of the bill filed by the trustees impels the conclusion that it was for the purpose of ascertaining the assets, the creditors, the debts and their amounts in their order of dignity and priority and for a complete winding up of the affairs of the insolvent. In substance, it required every creditor to come into the suit and assert his claim, especially those who were made parties. The purpose and object of the suit was to ascertain the assets and liabilities of the grocery company and apply the former to the latter. It is a familiar principle that an adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to any other matter which the parties might have litigated and had decided as incident to, or essentially connected with the subject-matter and coming within the legitimate purview and purpose of the suit. All such matters are held to be *res adjudicata* in all subsequent litigation in which the same matters and the same parties

are involved. *Sayre's Admr.* v. *Harpold,* 33 W. Va. 556; *Corrothers* v. *Sargent,* 20 W. Va. 351; *Tracey* v. *Shumate,* 22 W. Va. 475; *Blackwell's Admr.* v. *Bragg, Trustee,* 78 Va. 529. This rule of estoppel by judgment or decree is so well established that citation to the text books and decisions would be superfluous.

Can it be said that these notes were not within the purview and purpose of the first suit and a part of its subject-matter? It cannot be contended that these notes, then in the hands of these defendants, could not have been set up and allowed in that proceeding. The decree in that suit purports to ascertain all of the valid indebtedness and distributes all of the assets then in the hands and which may come into the hands of the trustees in the order therein set out. It adjudicated all the rights of the parties to the trust fund. The decree is conclusive on the parties and their privies of every fact the existence of which is affirmed, and whenever the existence of such facts is again put in issue between them it is *res adjudicata.*

It is asserted that the pendency of the suit between the trustees and the receiver to ascertain the true state of the accounts between the bank and the grocery company (both suits pending at the same time) is a sufficient cause to prevent the application of the doctrine of *res adjudicata.* These notes could have been pleaded as a set-off in the latter suit, to reduce the final judgment therein obtained. They should have been adjudicated in either one suit or the other before final decrees; and the failure to do so will not now justify a change or modification in either of the decrees. The decree entered on the petition, and now complained of, would materially deplete the fund decreed to others by the decree of May 10, 1917.

The receiver in his deposition says he did not set up the Blackwell note, which was in his possession pending the first suit, because he was making an investigation of the financial condition of the makers and endorsers, and expected to collect the note from them. It is clear that this is no valid excuse. At the time of the final decree he did not

own or have in his possession the other note which at that time belonged to Linn. It was the duty of Linn, who was a party to the first suit, to present his claim and have it allowed in order to receive his proper share of the assets, and no valid reason is given for his failure to do so. Shane, the receiver, who obtained the note from Linn after the final decree, acquired no superior right in the premises to those of Linn.

We think the final decree of May 10, 1917, is a bar to the receiver from participation on these notes, in the trust funds distributable under that decree. The decree of the circuit court of December 31, 1920, will be reversed and the petition of the receiver dismissed.

*Reversed.*